## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GOOD TECHNOLOGY CORPORATION ) | |
| and GOOD TECHNOLOGY ) | |
| SOFTWARE, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 14-1308-LPS-CJB |
| ) | |
| MOBILEIRON, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Pending before the Court in this patent infringement case is Defendant MobileIron, Inc.'s

("Defendant" or "MobileIron") Motion to Transfer Venue (the "Motion") to the United States

District Court for the Northern District of California ("Northern District of California"). (D.I.

22) For the reasons that follow, the Court orders that Defendant's Motion be GRANTED.[1]

## I.    BACKGROUND

### A.    Procedural Background

Plaintiffs Good Technology Corporation and Good Technology Software, Inc.

(collectively, "Plaintiffs" or "Good") filed the instant case on October 14, 2014, alleging that

Defendant infringed United States Patent No. 8,117,344 (the "'344 patent"). (D.I. 1) Defendant

answered on October 29, 2014, asserting, *inter alia*, counterclaims of infringement of U.S. Patent

Nos. 8,869,307 (the "'307 patent") and 8,340,633 (the "'633 patent"). (D.I. 7) On October 27,

---

[1]     Our Court has made clear in recent decisions that a motion to transfer venue
should be treated as a non-dispositive motion. *See TSMC Tech., Inc. v. Zond, LLC*, Civil Action
No. 14-721-LPS-CJB, 2015 WL 328334, at \*1 (D. Del. Jan. 26, 2015); *see also Agincourt
Gaming LLC v. Zynga Inc.*, Civil Action No. 11-720-RGA, 2013 WL 3936508, at \*2 (D. Del.
July 29, 2013). Thus, the Court titles this document as a "Memorandum Order."

2014, Chief Judge Leonard P. Stark referred the instant case to this Court to resolve any and all matters with regard to scheduling, as well as any motions to dismiss, stay and/or transfer venue. (D.I. 6) Defendant filed the instant Motion on January 9, 2015, (D.I. 22), and briefing on the Motion was completed on February 5, 2015, (D.I. 32). The Court subsequently held a Case Management Conference on February 9, 2015, and entered a Scheduling Order thereafter. (D.I. 36) Trial in the case is scheduled for March 13, 2017. (*Id.*)

## B.     Additional Relevant Facts Regarding the Motion

Plaintiffs are Delaware corporations with their principal place of business in Sunnyvale, California, which is located in the Northern District of California. (D.I. 1 at ¶ 8) Their business is in the area of mobile data and device management, and they develop and market solutions to improve users' experiences on remote devices and provide a secure environment for users to access sensitive business and personal data. (*Id.* at ¶¶ 2-3) Defendant is a Delaware corporation with its principal place of business in Mountain View, California, also located in the Northern District of California. (*Id.* at ¶ 9; D.I. 7 at ¶ 9) It provides solutions that enable enterprise information technology managers to manage and secure their employees' mobile devices, as well as mobile applications and content. (D.I. 7 at ¶ 14)

The parties are also involved in an additional litigation matter in the Northern District of California, before United States Magistrate Judge Paul S. Grewal (the "California Action").[2] *See Good Tech. Corp. et al. v. MobileIron, Inc.*, Civil Action No. 5:12-cv-05826-PSG (N.D. Cal.). In the California Action, Good filed suit against MobileIron in November 2012, alleging

---

[2]     Moreover, the parties are litigating patent infringement matters against each other in the United Kingdom and Germany. (D.I. 30 at 2-3)

infringement of four patents: U.S. Patent Nos. 6,151,606 (the "'606 patent"), 7,702,322 (the "'322 patent"), 7,970,386 (the "'386 patent"), 8,012,219 (the "'219 patent"); in the same case, MobileIron asserts one patent, U.S. Patent No. 8,359,016 (the "'016 patent"). (California Action, D.I. 32, 41) Judge Grewal issued claim construction rulings on October 13, 2014, discovery closed on December 19, 2014 and trial is scheduled for July 27, 2015. (California Action, D.I. 135, 158)

## II.   DISCUSSION

### A.   Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.[3] It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

---

[3]      In analyzing a motion to transfer in a patent case, it is the law of the regional circuit that applies. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

The Third Circuit has observed that courts must analyze "all relevant factors" to

determine whether "the litigation would more conveniently proceed and the interests of justice be

better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotation marks

and citation omitted). Nevertheless, it has identified a set of private interest and public interest

factors that should be taken into account in this analysis (the "*Jumara* factors"). The private

interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original
> choice, [2] the defendant's preference, [3] whether the claim arose
> elsewhere, [4] the convenience of the parties as indicated by their
> relative physical and financial condition, [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora . . . and [6] the location of
> books and records (similarly limited to the extent that the files could
> not be produced in the alternative forum).

*Id.* (citations omitted). The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations
> that could make the trial easy, expeditious, or inexpensive, [3] the
> relative administrative difficulty in the two fora resulting from court
> congestion, [4] the local interest in deciding local controversies at
> home, [5] the public policies of the fora, . . . and [6] the familiarity
> of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

## B.    Discussion

The Court will proceed to analyze the *Jumara* factors and their impact on whether

transfer should be granted.[4]

---

⁴        In doing so, the Court will assume, without deciding, that the "first-to-file" rule is
not implicated here. MobileIron argued to the contrary that the rule was implicated, with the
California Action amounting to the first-filed case (and the instant case the second-filed matter),
on the grounds that the California Action involves substantially similar parties and issues to those
involved in this case. (D.I. 23 at 5-7) Although (as is further set out herein) there are a great deal

## 1. Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E–Z–Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal quotation marks and citation omitted). Here, there can be no dispute that this infringement action could have been properly brought in the Northern District of California, where MobileIron has its principal place of business. *See* 28 U.S.C. § 1400(b).

## 2. Application of the *Jumara* Factors

### a. Private Interest Factors

#### i. Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at \*4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*")

of similarities between the California Action and this matter, the Court questions whether the first-filed rule applies in this circumstance. For one thing, our Court has tended to find the rule implicated most often in situations where both cases involved the same patent or patents. *See Fuisz Pharma LLC v. Theranos, Inc.*, Civil Action No. 11-1061-SLR-CJB, 2012 WL 1820642, at \*5 & n.6 (D. Del. May 18, 2012) (citing cases); *see also Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp.*, No. Civ. 05-853-SLR, 2006 WL 1749399, at \*4 (D. Del. June 21, 2006). And, as Good notes, this would be an unusual circumstance in which to invoke the rule, since the rule is typically asserted when "the *defendant* in the first-filed action files a later action in an alternate forum, asserting claims that are identical to those brought in the first-filed action" and not (as here) where "the *party that initiated* [the first action] is also the party that filed the instant action in this District[.]" (D.I. 30 at 7 (emphasis in original)) In any event, the Court need not decide the issue, as even were the California Action not considered the first-filed action, the *Jumara* factors still counsel that transfer to the Northern District is the appropriate course here.

5

(citing cases), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013) ("*Pragmatus II*"); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at \*4 (internal quotation marks and citations omitted) (citing cases); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753 (D. Del. 2012) ("*Altera*").[5]

Plaintiffs cite a number of reasons as to why they chose to file suit in this District. (D.I. 30 at 8-9) Among those are that they brought the case in a District in which they are incorporated, and thus where they have previously availed themselves of the benefits of the State's laws and of its court systems. This reason has often been found to be both rational and legitimate in the transfer inquiry context. *See, e.g.*, *Altera*, 842 F. Supp. 2d at 754; *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479 (D. Del. 2011) ("*Checkpoint Software*"). So too has another reason highlighted by Plaintiffs—that they sued in Defendant's state of incorporation, a district in which they could have some certainty that there would be personal jurisdiction over Defendant. *See TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at \*15 (D. Del. Dec. 19, 2014) (citing cases); *Altera*, 842 F. Supp. 2d at 754.

---

[5]     On the other hand, where a plaintiff's choice of forum was made for an improper reason—such as where the choice is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it should not be afforded substantial weight. *Pragmatus I*, 2012 WL 4889438, at \*4; *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this would likely weigh in favor of transfer).

6

Therefore, because there are a number of clear, legitimate reasons why Plaintiffs chose this forum for suit, this factor weighs against transfer.

## ii. Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—Defendant prefers to litigate in the Northern District of California. (D.I. 23 at 9) In analyzing this factor, our Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus I*, 2012 WL 4889438, at \*6 (citation omitted).

Defendant argues throughout its briefing that it has a number of legitimate reasons for seeking to transfer this action to the Northern District of California, including the fact that its headquarters are located there, as are many likely party witnesses and relevant documents. (D.I. 23 at 9-10; D.I. 32 at 5-6) This Court has often held that the physical proximity of a defendant's place of business (and relatedly, of witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer to that district. *See, e.g.*, *Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at \*1 (D. Del. Aug. 8, 2014) (finding the fact that a defendant's principal place of business was located in the proposed transferee forum to "weigh[] in favor of transfer"); *Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at \*1 (D. Del. Apr. 15, 2014) (finding that defendant's choice of forum "weighs in favor of transfer" because defendant's principal place of business was in the proposed transferee district and was where the majority of its 289 employees work).

Thus, the second private interest *Jumara* factor weighs in favor of transfer.

7

### iii. Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As a matter of law, a claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2013 WL 6869866 (D. Del. Dec. 30, 2013). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases); *Altera*, 842 F. Supp. 2d at 755 ("'[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.'") (quoting *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

In this case, it is undisputed that all of the accused products and services were developed by Plaintiffs and Defendant in the Northern District of California. (D.I. 23 at 10 (citing D.I. 24 at ¶ 5); D.I. 30; D.I. 32 at 7) Nor is it disputed that the inventions at issue were conceived and reduced to practice in that same district. (D.I. 23 at 10 (citing D.I. 24 at ¶ 9)) Plaintiffs note that Defendant sells certain accused products to, *inter alia*, Nemours, the Delaware-based children's health system. (D.I. 30 at 12 (citing D.I. 31, exs. E & F)) But even to the extent that the accused products are marketed and sold to a nationwide audience (including certain Delaware-based consumers), the record clearly indicates that a significant portion of the acts giving rise to the parties' claims of infringement have a far stronger connection to the Northern District of California than they do with Delaware (or any other district).

8

In such a circumstance, the Court finds that this factor weighs in favor of transfer. *See Nalco Co.*, 2014 WL 3909114, at *2 (finding that this factor "favor[ed] transfer" where the defendant "conduct[ed] all of its research and development, marketing, and sales out of" the proposed transferee forum such that plaintiff's claims arose "from products developed, marketed, and sold out of" that forum); *Altera*, 842 F. Supp. 2d at 755 (finding this factor weighed in favor of transfer where, *inter alia*, some research and development of allegedly infringing products had occurred in the proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide).

### iv.    Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined issues including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted); *McKee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770, at *4 (D. Del. Mar. 20, 2013) (citations omitted).

Defendant argues that because both parties are located in the Northern District of California, transfer would "enhance the convenience of all parties rather than merely shifting convenience from one party to another, and so this factor weighs in favor of transfer." (D.I. 23 at

9

10-11)[6] It asserts that its own "high-level employees" (including inventors who serve as MobileIron's Chief Technology Officer and Vice President of Strategy, respectively) are likely to be trial witnesses, and notes that nearly all of the potential witnesses whom the parties have named in their Initial Disclosures are California residents. (D.I. 32 at 6-7 (citing D.I. 25, exs. G & I))

Plaintiffs point out certain mitigating factors that take much of the sting out of Defendant's convenience argument.[7] (D.I. 30 at 13-14) Defendant is clearly a global corporation, one that employs over 560 persons and that generated over $100 million in revenue in 2013. (D.I. 31, exs. B, D, J & L) Perhaps as a result, it makes no argument that it would be unable to easily bear any increased costs associated with litigating in Delaware (as opposed to the proposed transferee forum). And as a Delaware corporation, it is an "uphill climb" for Defendant to argue that it is decidedly inconvenient for it to litigate in this State. *See Altera*, 842 F. Supp. 2d at 756 (citing *Micron Tech.*, 645 F.3d at 1332).[8]

---

[6]     Indeed, since Plaintiffs' principal place of business is also in the Northern District, it does not (and presumably could not) argue that litigating in that Court would be particularly inconvenient for it or its employees.

[7]     In addition to the arguments set out herein, Plaintiffs also assert that Defendant's filing of non-compulsory counterclaims in the instant action demonstrates that "it was convenient for [Defendant] to litigate in Delaware." (D.I. 30 at 14) But as Defendant notes, (D.I. 32 at 6-7), when it filed those counterclaims, it did so while explicitly reserving its right to file a motion to transfer venue. (D.I. 7 at 7) Under the circumstances, it is not clear to the Court what the filing of such counterclaims signals regarding Defendant's view as to the convenience of litigating in Delaware. The Court is unwilling to cite this as a factor redounding against Defendant as to the instant Motion.

[8]     Moreover, while there would be some additional inconvenience to Defendant's employee witnesses, were they obligated to travel to Delaware for pre-trial or trial proceedings, the amount of such travel is not likely to be large—particularly if this case does not result in a trial. *See, e.g., Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-

10

In the end, with nearly all possible employee witnesses located in the Northern District of California (and none in Delaware), the Court recognizes that this factor should tip in Defendant's favor to at least some degree. But because Defendant has not shown that travel to Delaware would amount to a significant disruption to those few likely trial witnesses, this factor weighs only slightly in favor of transfer. *See, e.g., Audatex N. Am., Inc.*, 2013 WL 3293611, at \*4-5 (concluding the same when both parties operated out of the proposed transferee district, both had sufficient resources to litigate in either forum and both were incorporated in Delaware); *Altera*, 842 F. Supp. 2d at 755 (concluding the same, where all parties were located in or near the proposed transferee district, but the record did not indicate that litigating in Delaware would impose an "undue financial burden" on defendants, who had extensive operations and significant annual sales).

### v. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. Of particular concern here are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001); *Affymetrix*, 28 F. Supp. 2d at 203.

Defendant notes that all nine of its patents' inventors and 10 out of the 11 Good patent

---

LPS, 11-328-LPS, 2011 WL 2911797, at \*7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware—particularly few if the case did not go to trial—weighed against transfer, as did technological advances that allow traveling employees to more easily interact with their office while away).

inventors live in the Northern District of California (the other lives in Washington State), and that a "significant number of the named inventors and product developers no longer work at MobileIron and Good[.]" (D.I. 23 at 11) Moreover, Defendant specifies that certain inventors of the '344 patent—lead inventor Daniel Mendez and inventor Mason Ng—no longer work for Good, and are listed on both parties' Initial Disclosures in this case as witnesses with discoverable information. (*Id.* at 11-12 & n.5; D.I. 25, exs. G & I; D.I. 32 at 8) Defendant further notes that both men are within the subpoena power of the Northern District of California (and not of this District), and that in the California Action, Defendant was required to subpoena Mr. Ng in order to obtain his deposition testimony in the case. (D.I. 23 at 11-12; D.I. 32 at 8) It argues that "[w]hile the Northern District of California would be able to compel the attendance of Ng and other non-party witnesses in the area, this Court would not be able to do so." (D.I. 23 at 12)

It is true that the practical impact of this factor is limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 382 n.6 (D. Del. 2012); *Altera*, 842 F. Supp. 2d at 757-58. And, as Plaintiffs note, as to many of the third-party witnesses Defendant references, Defendant did not cite to specific evidence indicating that the witnesses would actually be unlikely to participate in a trial in Delaware. (D.I. 30 at 15); *see also McRo, Inc.*, 2013 WL 6571618, at *9 ("Absent some concrete evidentiary showing that [potential third party witnesses] would be unlikely to testify, it is difficult to give [d]efendants' argument as to their potential unavailability significant weight."). But Defendant *did* give at least one example (that of Mr. Ng—an example Plaintiffs did not respond to in their answering brief) of why it is likely that as

12

to an important witness in this case, Defendant might well have to resort to the issuance of a subpoena to obtain relevant testimony. And because patent inventors are the kind of witnesses who are likely to possess significant information in a patent case, *see Pragmatus I*, 2012 WL 4889438, at *10, and in light of the very large number of California-based non-employee inventors that are at issue here, (*see* D.I. 25, exs. G & I), the Court is prepared to give this factor more weight than it otherwise might.

For these reasons, the Court finds this factor to weigh in favor of transfer.

### vi.    Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted); *see also Cellectis*, 858 F. Supp. 2d at 382; *ADE Corp.*, 138 F. Supp. 2d at 571.

Here, there is no real dispute that nearly all of the relevant books and records (and relevant source code) are likely to be found in the Northern District of California. (D.I. 23 at 12;

D.I. 24 at ¶¶ 6-7; D.I. 30 at 15-16) And there is also not much dispute that there would be no serious hurdle to producing those books and records in Delaware for trial (or that, as to the production of source code, any risks involved in such production could be well managed by the parties). *Pragmatus I*, 2012 WL 4889438, at *11. The Court thus finds this factor to weigh in favor of transfer, though only slightly. *See, e.g., Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, C.A. No. 12-cv-1479 (GMS), 2013 WL 4496644, at *6 (D. Del. Aug. 21, 2013); *Altera*, 842 F. Supp. 2d at 759; *Checkpoint Software*, 797 F. Supp. 2d at 485.

### b.    Public Interest Factors

The Court below addresses the four public interest factors that were asserted by the parties to be anything other than neutral. (D.I. 23 at 13-16; D.I. 30 at 16 n.13)

### i.    Practical considerations that could make the trial easy, expeditious, or inexpensive

The first of these public interest factors is "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The practical consideration cited by Defendant is the existence of the California Action, as Defendant asserts that "Good's and MobileIron's patents across the two cases have much in common." (D.I. 23 at 4, 13-15); *see Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account.") (citation omitted). Plaintiffs counter by arguing that the California Action involves patents that are different from those at issue here, such that the two cases cannot be said to involve common matters. (D.I. 30 at 5-7, 16-18) As is often the case in such arguments, there is some merit to both sides' positions.

14

As for the points favoring Defendant, the patents in the two actions can generally be said, as Defendant asserts, to "relate to the same technical field: systems for providing, authenticating, and regulating mobile access to network data." (D.I. 23 at 4) More compellingly, the '344 patent (at issue here) and the '606 patent (at issue in the California Action) both belong to the same patent family. Both are derived from U.S. Patent No. 6,023,708 (the "'708 patent"), portions of the specification and prosecution history relating to the two patents are similar, and both patents list the same inventor (Mr. Mendez). (*Id.*; D.I. 32 at 9) With respect to Defendant's patents, the specifications of the '307 patent (asserted here) and the '016 patent (asserted in the California Action) are largely identical. (*Compare* '307 patent, col. 1-21, *with* '016 patent, col. 1-21)

Aside from certain similarities among the patents-in-suit in the respective cases, other aspects of the cases overlap. There is a significant amount of uniformity among the accused products in both cases, (*see* D.I. 25 at ¶¶ 6-7 & exs. D & E), many of the same documents have been requested in discovery in both cases, (*see id.*, exs. J and K), and the cases involve a substantially similar group of document custodians and witnesses, (*see id.* at ¶¶ 10-11 & exs. F-I).

Additionally, because the California Action is near to trial, Judge Grewal has invested significant time and effort in that case, including presiding over a claim construction proceeding and issuing a *Markman* order on 16 claim terms, hearing argument on two motions for summary judgment of indefiniteness and issuing an order denying both motions, and conducting several discovery dispute hearings. (California Action, D.I. 119, 126, 135, 137, 147, 158, 169) The fact that the transferee court has become very familiar with related patents and with a case sharing other similarities to this one increases the opportunity for efficiency gains were this case

15

transferred to the Northern District of California. *Cf. TSMC Tech., Inc.*, 2014 WL 7251188, at *20 (noting that the "practical considerations" factor would "even more strongly favor" the moving party were the action pending in the proposed transferee district regarding similar patents "to have proceeded to the stage (such as past a *Markman* hearing, or summary judgment) where the District Court had already been required to review the patents, relevant prior art, or the accused technology in great detail") (citing cases); *Cashedge, Inc. v. Yodlee, Inc.*, No. Civ.A.06-170 JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (finding that the "practical considerations" factor was "strongly" in favor of transfer where the proposed transferee court had presided over litigation regarding the same parties, related patents-in-suit and similar technologies, including engaging in a technology tutorial, arguing *Markman* issues in nine related patents, and commencing discovery on seemingly related products and technologies).

With regard to the points in Plaintiffs' favor, Plaintiffs correctly note that, by and large, while the patents in both cases might generally relate to the same broad field, the patents tend to "implicate certain different technologic features." (D.I. 30 at 5) As for Plaintiffs' patents at issue, the '344 patent asserted here covers systems and methods for providing a user with authenticated access to computer services, (*see, e.g.*, '344 patent at 2:16-31), while its patents asserted in the California Action relate to systems and methods for data synchronization, updating software in and maintaining wireless devices, and preventing misuse of data on compromised remote devices, (*see, e.g.*, '606 patent, col. 2:9-11, '322 patent, col. 1:7-8, '386 patent, col. 1:8-10, '219 patent, col. 1:18-21) As for Defendant's patents at issue, the patents asserted here relate to monitoring mobile device security and aggregating mobile device usage data, ('307 patent at Abstract, '633 patent at Abstract), while the patent asserted in the California

16

Action relates to the distribution and publication of applications to mobile device users, ('016 Patent at Abstract). Because the patents among the cases are different, and involve different technologies (albeit within the same general field), they will likely implicate, *inter alia*, some different claim construction issues and different relevant prior art. *See TSMC Tech., Inc.*, 2014 WL 7251188, at \*19; *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2013 WL 4629000, at \*9 (D. Del. Aug. 28, 2013).

In the end, though Plaintiffs are correct that this action and the California Action are not mirror-image litigations, Defendant has persuasively demonstrated that the matters share much in common. Were the case transferred to the Northern District of California, it would almost certainly be deemed related to the California Action, (D.I. 32 at 9), and one federal judge would oversee two cases that involve numerous common elements. The benefits to the judicial system in such a circumstance indicate that this factor favors transfer. *See Joao Control & Monitoring Sys.*, 2013 WL 4496644, at \*8 (finding that the "practical considerations" factor weighed in favor of transfer where an action was proceeding in the proposed transferee district that involved related patents and the same accused product); *cf. Ross*, 2013 WL 5299171, at \*13-14 (finding that the "practical considerations" factor weighed "strongly in favor of transfer" where closely related actions were proceeding in the proposed transferee district and that court was thus familiar with the parties and issues involved).

### ii. Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion[.]" *Jumara*, 55 F.3d at 879. Defendant asserts that this factor weighs "slightly in favor of transfer or [is] neutral." (D.I. 23 at 15)

17

However, as even Defendant acknowledges, this District and the Northern District of California "experience similar court congestion." (*Id.*) The evidence submitted bears this out. The parties put forward statistics regarding civil case filings for one-year periods ending in September 2013 and March 2014, respectively. (D.I. 25, ex. N; D.I. 31, ex. K) Those statistics indicate that the median time to disposition in civil cases was even (as to the period ending in September 2013) and was one month faster in this District (in the period ending in March 2014). (*Id.*) They indicate that the median time to trial was between three months and approximately five months faster in the Northern District of California in the relevant periods. (*Id.*) Such statistics do not demonstrate a meaningful difference in court congestion, and thus this factor is neutral. *See, e.g.*, *Pragmatus I*, 2012 WL 4889438, at *13 (concluding that the relative court congestion did not favor transfer in part due to the fact that the transferee district's average time to trial was only .85 months less than in this District, and the average time to disposition was 3.1 months less); *Checkpoint Software*, 797 F. Supp. 2d at 486 (concluding the same, where the difference in time to trial favored the transferee district by 3.7 months, an "'inconsequential'" amount) (internal citation omitted).

### iii. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Nevertheless, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."

18

*In re Hoffmann-La Roche*, 587 F.3d at 1338 (citations omitted); *see also Graphics Props.*, 964 F. Supp. 2d at 330-31.

It is true, as Plaintiffs argue, (D.I. 30 at 19-20), that "Delaware has a strong interest in adjudicating disputes among its corporate citizens[,]" particularly in a case involving litigation "solely among Delaware corporations." *Altera*, 842 F. Supp. 2d at 760. This interest, however, is counterbalanced here by the fact that both parties are headquartered in the proposed transferee district.[9] *Checkpoint Software*, 797 F. Supp. 2d at 486; *Altera*, 842 F. Supp. 2d at 760.

With both sides able to claim a tangible local interest, the Court finds this factor to be neutral. *See, e.g.*, *Altera*, 842 F. Supp. 2d at 760; *Checkpoint Software*, 797 F. Supp. 2d at 486; *cf. In re Amendt*, 169 F. App'x 93, 97 (3d Cir. 2006) (finding that the "interests of the two fora in deciding the controversy appear roughly equal because the [plaintiffs] live in [the district in which the case was filed], but [defendant] is headquartered in [the transferee district]").

## iv. Public policy of the fora

The next factor relates to the public policy of the respective fora. This Court has previously held in the transfer context that the "'public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes.'" *Graphics Props.*, 964 F. Supp. 2d at 331 (internal quotation marks and citation omitted). Delaware promotes itself as a place that entities (such as all parties here, including those opposing transfer)

---

<sup>9</sup>      Defendant asserts that because "nearly all of the inventors and product developers reside in Northern California" the "Northern District's interest in this litigation is magnified[.]" (D.I. 23 at 15-16 (citing *In re Hoffmann-La Roche, Inc.*, 587 F.3d at 1336)) Yet without any indication in the record as to how the *specific facts of this case* indicate that these patent infringement allegations raise particularly acute concerns about the reputations or economic future of individuals in the Northern District of California, the Court is not prepared to find that this factor should weigh more strongly in favor of Defendant.

19

should choose as their corporate home, and in doing so, touts itself as a forum well-positioned to help resolve business disputes. *See, e.g., Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d. 597, 604 & n.9 (D. Del. 2012). On the other hand, Defendant argues that "public policy reasons support transfer because of the overriding concerns of comity and judicial economy" implicated by the fact that the California Action has already pushed well forward in the Northern District of California. (D.I. 23 at 16); *see also Zazzali v. Swenson*, 852 F. Supp. 2d 438, 453 (D. Del. 2012) (noting that "having one court decide related cases is an important public policy factor in the analysis").

The Court finds that based on the arguments set out above, this factor is neutral.

### c. Conclusion Regarding Impact of *Jumara* Factors

In sum, Plaintiffs' choice of forum weighs squarely against transfer. Defendant's forum preference, whether the claim arose elsewhere, the "convenience of the witnesses" factor and the "practical considerations" factor all weigh squarely in favor of transfer. The "convenience of the parties" factor and the location of books and records weigh slightly in favor of transfer. The remainder of the *Jumara* factors are neutral.

The Court concludes that a balancing of the *Jumara* factors produces a result that is "strongly in favor of" transfer. *Shutte*, 431 F.2d at 25. Although both parties here are Delaware corporations, those same parties are also both headquartered within the proposed transferee district—the place where nearly all significant case documents and witnesses are to be found, where the acts giving rise to the case primarily occurred, and where another Court has become significantly enmeshed in a related dispute between the parties. This is a strong case for transfer, and for the above reasons, transfer is appropriate here.

## III.    CONCLUSION

The Court hereby ORDERS that the Motion be GRANTED.

Dated: March 27, 2015

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE